IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
NORTHERN DIVISION

GREENE COUNTY TECH SCHOOL DISTRICT                     PLAINTIFF

v.                          Case No. 3:17-cv-00047-KGB

MW, an adult, and CARLA WILSON, mother of MW             DEFENDANTS

## ORDER

Before the Court is the status of this case.  Previously, on March 31, 2019, the Court entered an Order granting plaintiff Greene County Tech School District's ("the District") motion to dismiss with respect to a claim for attorneys' fees under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. §§ 1400 *et seq.*, and denying the District's motion with respect to the counterclaim and third-party complaint filed by defendants MW, an adult, and Carla Wilson, mother of MW (collectively, "the Wilsons") (Dkt. No. 32).[1]  In that Order, the Court denied the District's motion to dismiss the Wilsons's counterclaim and third-party complaint because of the limited record and briefing submitted by the parties (*Id.*, at 14).

By separate Order, the Court requested the parties to brief the law and identify the record facts related to the Wilsons's remaining claims in the counterclaim and third-party complaint (Dkt. No. 33).  The parties complied with the Court's briefing schedule (Dkt. Nos. 34–36).  For the

---

[1] The Court acknowledges that MW attained the age of majority sometime before or during the pendency of this dispute.  The Arkansas Department of Education, Special Education Unit, addressed this matter and denied a motion to dismiss for lack of standing (Dkt. No. 17-5).  The parties have not raised this issue again before this Court.

Further, with respect to this Court's prior Order dismissing the Wilsons's claim for attorneys' fees, the Court notes that the Eighth Circuit clarified the time period for filing a fee petition under the IDEA and Arkansas law in *Richardson v. Omaha School District*, 957 F.3d 869 (8th Cir. 2020).  In addition, for reasons explained in this Order, the Court rejects any assertion that the Wilsons prevailed on the merits of the stay-put issues before this Court.

following reasons, the Court now grants the District's motion to dismiss the Wilsons's counterclaim and third-party complaint. The Wilsons's request for relief is denied, and the Court dismisses this action.

## I.      Background

### A.      Preliminary Injunctive Relief

At the time this litigation commenced, the Wilsons had filed a special education due process complaint against the District with the Arkansas Department of Education ("ADE"), Special Education Division, Case Number H-17-20 (Dkt. No. 1, ¶ 2). The District filed a complaint for injunctive relief against the Wilsons in this Court seeking, in part, "an injunction from this court prohibiting Wilson from denying MW access to her education by preventing District from receiving essential medical information from MW's PCP and mandating that Wilson take necessary steps to release the medical information to District and to permit MW's attendance at school." (*Id.*, ¶ 10). In its complaint, the District stated:

> District desires for MW to attend school but is unable to feed MW because critical medical information is being withheld by Wilson on behalf of MW. Wilson will not allow MW to attend school unless District feeds MW without the benefit of this medical information. District seeks an injunction from this court against MW and Wilson mandating that this medical information be released to District in order that District may feed MW safely at school.

(*Id.*, ¶ 3).

In response to the District's complaint, the Wilsons filed a counterclaim and third-party complaint (collectively, "counterclaim") (Dkt. No. 13). In their counterclaim, the Wilsons name as defendants the District; Gene Weeks, Superintendent of Schools; Chad Jordan, High School Principal; and Tammy Birmingham, Special Education Director (collectively, "defendants"). The Wilsons raise three causes of action: (1) liability under 42 U.S.C. § 1983 against defendants for

violation of the stay-put provision of the IDEA[2] as an alleged denial of procedural and substantive due process and equal protection under the Fourteenth Amendment (*Id.*, ¶¶ 47–70); (2) liability under § 504 of the Rehabilitation Act of 1973, 29 U.S.C. §§ 701 *et seq.*, against the District, claiming unlawful discrimination based on a disability (*Id.*, ¶¶ 71–86); and (3) liability under Title II of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. §§ 12131–12165, against the District, alleging unlawful discrimination based on a disability (*Id.*, ¶¶ 87–97).  At no time have the Wilsons moved to amend their counterclaim.  In their counterclaim, the Wilsons state that "[t]his case involves the District's actions in refusing to implement [MW's] [individualized educational plan ("IEP")]; in refusing to allow [MW] access to any educational services; and in refusing to implement the Stay Put Order issued by the Due Process Hearing Officer." (*Id.*, ¶ 22).

In their counterclaim, the Wilsons request compensatory damages "in an amount sufficient to fully compensate [the Wilsons] for their injuries, damages, and losses"; all costs and expenses, including attorneys' fees, in accordance with 42 U.S.C. § 1988; enforcement of the stay-put order and "appropriate compensatory relief"; declaratory and injunctive relief against the District to "redress their systemic violations of law"; and that the Court retain jurisdiction for purposes of enforcing the Court's orders (*Id.* at 28).  The Wilsons also requested a preliminary injunction ordering the District to allow MW to return to school, to implement the services and supports on MW's IEP, and to allow access to a private healthcare aide for MW (Dkt. No. 17, at 9).

On April 6, 2017, the Court held an evidentiary hearing at which:  (1) the District withdrew its then-pending motion to dismiss without objection; (2) the District agreed to follow the stay-put

---

[2]  The IDEA includes the so-called "stay-put" provision, which provides that, during an administrative or judicial proceeding, the child shall remain in his "current educational placement." 20 U.S.C. § 1415(j); *see also* 20 U.S.C. § 1415(k)(3) (discussing the process whereby the parent of a child with a disability may request a change-of-placement order from a hearing officer); 34 C.F.R. §§ 300.518, 300.532 (implementing regulations).

order entered by the ADE hearing officer in Case No. H-17-20 (Dkt. No. 17-2); (3) the parties agreed to reserve the issue of attorneys' fees associated with their cross-motions for injunctive relief; and (4) the parties agreed that the Court would retain jurisdiction of the action (Dkt. No. 25, at 1).  Based on the parties' agreement, the Court denied as moot the then-pending cross-motions for injunctive relief (Dkt. No. 24).   In this Court's Order from May 4, 2017, the Court acknowledged "that the parties have reserved the issue of attorneys' fees associated with their cross-motions for injunctive relief."  (Dkt. No. 25, at 1).  In that Order, the Court retained jurisdiction "over any disputes that should arise regarding the terms or conditions of the stay-put order issued by the ADE hearing officer."  (*Id.*, at 2 (citing Dkt. No. 17-2)).

### B.   ADE Final Decision And Order

The parties continued to pursue these matters before the ADE.  On November 3, 2017, the hearing officer entered a Final Decision and Order in the ADE, Special Education Unit, Case No. H-17-27 ("ADE Final Order") (Dkt. No. 26-1).  In the ADE Final Order, the hearing officer explained that the Wilsons's claims, in alleging that the District denied a free appropriate public education ("FAPE") to MW, specifically asserted, among other allegations, that the District failed:

12.   To  provide feeding services as required by the Student's special needs;

13.   To appropriately implement the services on the Student's IEP;

14.   To provide the Student with any educational services since October 24, 2016; and

15.   By violating the Stay Put provisions of the IDEA since January 9, 2017.

(*Id.*, at 2).

The Wilsons sought as relief, in part:  "For the Parent [to] be declared to have exhausted her administrative remedies as to her § 504 claims."  (*Id.*, at 4).  However, the hearing officer explained:

Issues raised by the Petitioner in her request for a due process hearing under the
IDEA that were decided by the hearing officer as non-judiciable included
allegations that the Respondent engaged in actions in violation of Section 504 of
the Rehabilitation Act of 1973.  These issues were dismissed from being heard by
pre-hearing order issued on April 18, 2017.

(*Id.*, at 4).

After a multi-day hearing at which the Wilsons and the District presented evidence, the

hearing officer found "in part for the District and in part for the Parent" and awarded the Wilsons

limited relief (*Id.*, at 55).  The hearing officer ordered the following:

1.  Upon receipt of this order, but no later than November 30, 2017, the Parent will
    provide the District with the necessary documentation in order for Easter Seals to
    conduct an adaptive communication evaluation and any assistive technology
    evaluations they deem appropriate to assist the Student in the classroom as well as
    in implementation of the associated related services.

2.  Upon receipt of this order the Parent will sign consent for District personnel
    responsible for the health and safety of the Student to receive directions on types of
    foods and how best to assist with feeding as well [as] administer prescribed
    medications for the Student.

3.  Upon receipt of this order, but no later than November 30, 2017, the District will
    submit the CIRCUIT request for Easter Seals to conduct the augmentative
    communication and assistive technology evaluations as noted in number (1) above.

4.  Upon receipt of this order, but no later than January 5, 2018, the District will
    conduct a facilitated IEP conference to develop an IEP for the Student to complete
    classes necessary for her to receive a high school diploma.  The Parent will not
    dictate which District personnel will be present to assist in the development of the
    IEP.

5.  Should the Parent fail to comply with item one (1) above the District will still be
    obligated to conduct the facilitated IEP conference as ordered in item three (3), and
    develop an IEP based on the best information available as of January 5, 2018.

(*Id.*, at 55–56).

Under the IDEA, a party aggrieved by the findings and decision of the hearing officer has

90 days from the date of the decision to bring a civil action in either federal district court or a state

court of competent jurisdiction.  *See* 20 U.S.C. § 1415(i)(2).  Neither the District nor the Wilsons filed such an appeal.

### C.    Maintaining This Action

On May 10, 2018, the District filed a motion to dismiss for lack of jurisdiction, which the parties briefed (Dkt. Nos. 26, 28, 30).  By prior Order, this Court granted the District's motion to dismiss any claim for attorneys' fees under the IDEA but requested further briefing from the parties as to several remaining issues (Dkt. Nos. 32, 33).  By separate Order, the Court requested the parties to brief the law and identify the record facts related to the Wilsons's remaining claims in the counterclaim and third-party complaint (Dkt. No. 33).  The parties complied with the Court's briefing schedule (Dkt. Nos. 34, 35, 36).

## II.    Analysis

Defendants move to dismiss the Wilsons's counterclaims, contending: (1) that the counterclaims are barred by the law-of-the-case doctrine; (2) that the counterclaims are barred because the Wilsons failed to exhaust their administrative remedies and because the counterclaims are precluded by the hearing officer's ADE Final Order; and (3) that the Wilsons cannot prove deliberate indifference, bad faith, or gross misjudgment.  The Wilsons contend that defendants' motion should be denied because they prevailed on the issue of the stay put in the administrative proceeding and in this Court and because they have alleged facts sufficient to establish that defendants acted with deliberate indifference so as to survive defendants' pending motion to dismiss (Dkt. No. 35, at 1).

### A.    IDEA Overview

The IDEA requires state and local educational agencies that accept federal funding to provide a FAPE for disabled children.  *See Honig v. Doe*, 484 U.S. 305, 308 (1988).  The scheme

6

as a whole reflects congressional recognition that disabled children had been commonly "excluded from the public school system altogether" or "simply 'warehoused' in special classes or were neglectfully shepherded through the system until they were old enough to drop out." *Id.* at 309.

In the IDEA, Congress established procedural safeguards to ensure that individuals with disabilities will have the opportunity to obtain a FAPE. *See* 20 U.S.C. § 1415(a). "The primary tool for implementing the aims of the IDEA is the IEP, which 'tailor[s] the statutorily required "free appropriate public education" to each child's unique needs.'" *J.B. ex rel. Bailey v. Avilla R-XIII Sch. Dist.*, 721 F.3d 588, 592 (8th Cir. 2013) (quoting *Honig*, 484 U.S. at 311). The IEP is designed to "meet the child's needs that result from the child's disability to enable the child to be involved in and make progress in the general educational curriculum." 20 U.S.C. § 1414(d)(1)(A)(II)(aa). The IDEA is intended to assure individualized attention to the needs of the handicapped child. Such children have the right to an education in the least restrictive setting and, to the maximum extent possible, they must be "mainstream[ed]" with non-handicapped students. *Honig*, 484 U.S. at 311.

Some safeguards of the IDEA include "an opportunity to present complaints concerning any aspect of the local agency's provision of a free appropriate public education; and an opportunity for 'an impartial due process hearing' with respect to any such complaints." *Id.* at 312 (quoting 20 U.S.C. §§ 1415(b)(1), (2)). Along with procedural protections, including a parent's or school's right to an administrative hearing if the parent or school disagrees with a placement decision, the IDEA also includes the so-called "stay-put" provision, which provides that, during an administrative or judicial proceeding, the child shall remain in his "current educational placement." 20 U.S.C. § 1415(j); *see also* 20 U.S.C. § 1415(k)(3) (discussing the process whereby the parent of a child with a disability may request a change-of-placement order from a hearing

officer); 34 C.F.R. §§ 300.518, 300.532 (implementing regulations).  The congressional intent of the stay-put provision is to ensure that public schools do not remove handicapped children over parents' objections pending completion of legal proceedings. *See Sch. Comm. of Burlington v. Dep't of Educ.*, 471 U.S. 359, 373 (1985).  The stay-put provision creates a strong presumption that children remain in their current educational placements while their parents and school districts sort out the legal ramifications.  *See Honig*, 484 U.S. at 328.

Under controlling precedent, courts have limited authority to afford relief from the stay-put provision during the pendency of proceedings.  For example, in *Honing*, the Supreme Court declined to find an implied exception to the stay-put provision for allegedly "dangerous students." *Id.* at 323.  The Court held that Congress intended "to strip schools of the *unilateral* authority they had traditionally employed to exclude disabled students, particularly emotionally disturbed students, from school." *Id.*  However, the Court found authority for a school board to seek relief "in those cases in which the parents of a truly dangerous child adamantly refuse to permit any change in the placement . . . ." *Id.* at 326.  According to the Court, the authority for such relief, which includes injunctive relief, is found in the IDEA, as well as in the equitable powers of the court.  *See id.* at 327.  The Court determined that nothing in the IDEA "operates to limit the equitable powers of district courts such that they cannot, in appropriate cases, *temporarily enjoin a dangerous disabled child from attending school*." *Id.* (emphasis added).  When considering whether to grant such relief, courts are required to apply a balanced consideration of the student's rights under the IDEA and the rights of the school board in maintaining a safe environment for all students.  *See id.* at 328.  In *Light v. Parkway C-2 School District*, 41 F.3d 1223, 1227 (8th Cir. 1994), the Eighth Circuit Court of Appeals determined that courts could exercise their equitable power to remove an allegedly dangerous student from current placement.  Importantly, in *Light*,

the court emphasized that the interim placement sought by the school district for the student should be maintained only until the student's long-term placement could be finalized through the IDEA's administrative review process. *See id* at 1230–31.

A party aggrieved by the outcome of an IDEA due process hearing may challenge the outcome before the state educational review agency. *See* 20 U.S.C. § 1415(g)(1).  The outcome of the administrative review hearing may then be disputed in district court. *See* 20 U.S.C. § 1415(i)(2)(A).  On review, the district court must take into consideration not only the records of the administrative proceedings but also any additional evidence submitted by the parties. *See* 20 U.S.C. § 1415(i)(2)(B).  While the district court should make an independent determination of the issues based on a "preponderance of the evidence," 20 U.S.C. § 1415(i)(2)(C)(iii), the Supreme Court has emphasized that the district court must afford the administrative proceedings "due weight," *Board of Educ. v. Rowley,* 458 U.S. 176, 206 (1982).  Courts may not "substitute their own notions of sound educational policy for those of the school authorities which they review." *Id.*  This is because, as the *Rowley* Court admonished, "courts lack the 'specialized knowledge and experience' necessary to resolve 'persistent and difficult questions of educational policy.'" *Id.* at 208 (quoting *San Antonio Indep. Sch. Dist. v. Rodriguez*, 411 U.S. 1, 42 (1973)); *see also Blackmon ex rel. Blackmon v. Springfield R-XII Sch. Dist.*, 198 F.3d 648, 654–55 (8th Cir. 1999) (examining the review process).

Further, generally there is an exhaustion requirement that applies under the IDEA before parties may seek certain types of relief in court. *See Fry v. Napoleon Cmty. Sch.*, 137 S.Ct. 743, 753–57 (2017) (examining the scope of the IDEA's exhaustion requirement). The Supreme Court has explained, in regard to exhaustion policies:

> Exhaustion is generally required as a matter of preventing premature interference with agency processes, so that the agency may function efficiently and so that it

may have an opportunity to correct its own errors, to afford the parties and the courts the benefit of its experience and expertise, and to compile a record which is adequate for judicial review.

*Bowen v. City of New York*, 476 U.S. 467, 484 (1986) (quoting *Weinberger v. Salfi*, 422 U.S. 749, 765 (1975)).

### B.     Dismissal Of Counterclaim

Here, the District initiated a complaint for injunctive relief to challenge the stay-put order, and the Wilsons filed their counterclaim when, admittedly, they had not exhausted their administrative remedies available under the IDEA.  The hearing officer had not issued the ADE Final Order at the time the Wilsons filed their counterclaim.

To the extent that the Wilsons argue that they were the prevailing party on their stay-put claim before this Court and before the hearing officer, the Court rejects that argument.  The Wilsons contend that they filed their due process complaint because the District unilaterally decided to change MW's placement by refusing to implement her IEP and feed her at school, constructively excluding her from school; the hearing officer twice ruled that the District violated the stay put by refusing to implement MW's IEP and feed her at school as required; and the District finally agreed to comply with the hearing officer's stay-put orders in proceedings before this Court (Dkt. No. 35, at 11–12 (citing Dkt. Nos. 13, ¶¶ 40, 44; 25, at 1)).  Further, the Wilsons contend that "[t]he hearing officer did not disturb the agreed order requiring the District to comply with stay-put." (*Id.*, at 12 (citing Dkt. No. 26-1, at 45)).  The Wilsons maintain that, because they were the prevailing party on their stay-put claim before the hearing officer and before this Court, claim preclusion and the law-of-the-case doctrine do not bar the Wilsons's counterclaim.  Instead, the Wilsons maintain that the District is barred by claim preclusion and the law-of-the-case doctrine from disputing that it violated the stay put from January 9, 2017, until April 6, 2017 (*Id.* at 12).

In its reply, the District contends that "its nurses believed it unsafe to feed MW without having the orders of the personal care physician. . . .   Some alternatives were offered to Ms. Wilson, but she still would not supply the orders.  However, on the eve of the federal court hearing, she supplied them rather than face questioning about why she did not do so." (Dkt. No. 36, at 2). The District maintains that, "[w]ith this background, the parties settled on leaving federal court and getting MW in school and being fed.  Neither side agreed that it did anything wrong." (*Id.* at 2).

The Court determines that the Wilsons did not prevail on the stay-put issue either before this Court or the hearing officer.  The Court did not rule on the merits of this dispute at the hearing it convened on April 6, 2017; the parties reached an agreement as to the stay-put claim.  The Court memorialized the parties' agreement in its written Orders (Dkt. Nos. 24, 25).  The record suggests that the parties' agreement was the result of compromise on both sides to some extent.

Before the hearing officer, the Wilsons sought as relief, in part:  "For the Parent [to] be declared to have exhausted her administrative remedies as to her § 504 claims." (Dkt. No. 26-1, at 4).  However, the hearing officer explained:

> Issues raised by the Petitioner in her request for a due process hearing under the IDEA that were decided by the hearing officer as non-judiciable included allegations that the Respondent engaged in actions in violation of Section 504 of the Rehabilitation Act of 1973.  These issues were dismissed from being heard by pre-hearing order issued on April 18, 2017.

(*Id.*, at 4).  The pre-hearing order issued on April 18, 2018, does not appear in the record before this Court.

Regardless, it appears that the parties fully litigated before the hearing officer issues surrounding the District's compliance with the stay-put provision and whether that conduct constituted denial of a FAPE.  The hearing officer stated in the ADE Final Order:

15.     Did the District fail to provide the Student FAPE by violating the Stay Put provision of the IDEA since January 9, 2017?  The obvious answer to the complaint question is that the District did not provide services to the Student after October 24, 2016.  The stay put provision as held by the District Court continues to be the controlling decision with regard to educational services for the Student.

Is the District in violation of the substantive obligations of the IDEA by failing to develop and implement an IEP for the above school years designed to provide the Student with an educational benefit and as such denied the Student FAPE?  The only IEP that reaches this level of a denial of FAPE is the failure of the District to implement the court ordered IEP of October 19, 2016.  However, the implementation of this IEP was hampered by the Parent's refusal to accept the precautions and limitations suggested by the District in their concern for the safety of the Student.  Thus no denial of FAPE for failure to implement the substantive obligations of the IDEA can be justified from the evidence and testimonies presented in this hearing.

(Dkt. No. 26-1, at 45).

Further, the hearing officer determined:

In reviewing the elicited testimony and the evidence, in this case there is ample testimony and evidence that the District attempted to focus on the Student's unique needs, but it would appear that they were hampered by the time constraints and physical demands deemed appropriate to address in order for the Student to have access to an education.  Additionally, the District was hampered by the frustration exhibited by the Parent in refusing to consent to evaluations which may have improved the Student's access to her education.

The Parent was obviously concerned as to how the District staff responded to the Student's multiple physical needs; however, she hampered their ability to seek clarification as to how best [to] serve the oral and feeding needs that the Student exhibited.   Had she cooperated with providing consent, the primary issue surrounding the failure to provide services beyond October 24, 2016, may never have happened.  The Parent's challenge that the District denied the Student FAPE during the adjudicated period of time is[,] however, not supported by the evidence.  At the same time the evidence and testimony shows that the District attempted to seek out safe feeding information as well as additional evaluations to measure the Student's unique communication needs, but were hampered in the process by the Parent not providing the appropriate written consents.

(*Id.*, at 51–52).

The Wilsons never moved to amend their counterclaims after the hearing officer issued the

ADE Final Order, nor did the Wilsons purport to appeal from the hearing officer's ADE Final

12

Order after it was issued.  On the record before the Court, giving due deference to the ADE Final Order, the Court is not inclined to permit the Wilsons now to relitigate the stay-put issues through their counterclaim by asserting § 1983, § 504, or ADA claims.  The Court determines that it is precluded under the law-of-the-case doctrine from revisiting the hearing officer's conclusions. The Court also determines that, regardless of whether the Wilsons failed to exhaust their administrative remedies, their counterclaims are precluded by the hearing officer's ADE Final Order, the merits of which the Wilsons did not challenge after its issuance.  For these reasons, the Court grants defendants' motion to dismiss the Wilsons's counterclaims.

### 1.      Law-Of-The-Case Doctrine

The District argues that the hearing officer's ADE Final Order is "the law of the case," thereby foreclosing the Wilsons's counterclaim  (Dkt. Nos. 27, at 3–4; 34, at 1–6).  The Wilsons disagree.

The law-of-the-case doctrine "posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 816 (1988) (quoting *Arizona v. California*, 460 U.S. 605, 618 (1983)).  "This doctrine 'requires courts to adhere to decisions made in earlier proceedings in order to ensure uniformity of decisions, protect the expectations of the parties, and promote judicial economy.'"  *Murphy v. FedEx Nat'l LTL, Inc.*, 618 F.3d 893, 905 (8th Cir. 2010) (quoting *United States v. Bartsh*, 69 F.3d 864, 866 (8th Cir. 1995)).  Courts apply the law-of-the-case doctrine differently depending on the context of each case.  *See Dethmers Mfg. Co. v. Automatic Equip. Mfg. Co.*, 299 F. Supp. 2d 903, 911 (N.D. Iowa 2004).  The District of Columbia Circuit Court of Appeals has held that, when a hearing officer's final decision is not "challenged administratively or otherwise appealed," "the law of the case doctrine precludes [the

court] from revisiting the hearing officer's conclusion . . . ." *District of Columbia v. Ijeabuonwu*, 642 F.3d 1191, 1195 (D.C. Cir. 2011) (citing *United States v. Thomas*, 572 F.3d 945, 949 (D.C. Cir. 2009), and *Kaseman v. District of Columbia*, 444 F.3d 637, 641–42 (D.C. Cir. 2006)).

Neither side brought a timely action in this Court challenging the hearing officer's conclusions from the ADE Final Order after that order was issued.  In its prior Order, the Court determined that it is precluded under the law-of-the-case doctrine from revisiting the hearing officer's conclusions.  However, the Court also determined that there were remaining open questions as to whether the law-of-the-case doctrine precludes the Court from deciding any other issues left in this case, including, but not limited to, matters raised in the counterclaim.  The parties have had the opportunity to brief fully these issues.  Having reviewed the parties' filings and the record before it, the Court determines that the Wilsons litigated the stay put and other issues of MW's IEP in the administrative proceeding, accepted the result, and did not appeal the hearing officer's determinations.  As a result, the Court concludes that the Wilsons are foreclosed from relitigating those issues now through their counterclaim.

### 2.      Exhaustion And Preclusion

The District further argues that the Court lacks subject-matter jurisdiction over the Wilsons's counterclaim because the administrative remedies available to the Wilsons were not exhausted, and the hearing officer's decision precludes these claims (Dkt. No. 31, at 3; 34, at 6–9).

A party may bring a lawsuit in federal court to secure her right under the IDEA to receive a FAPE but only after exhausting her administrative remedies at the state level.  *See* 20 U.S.C. §§ 1415(i)(2)(A), (l).  Although the IDEA does not pre-empt parties from also seeking relief under the United States Constitution, the Rehabilitation Act, or the ADA, it does require "that before the

14

filing of a civil action under such laws seeking relief that is also available under [the IDEA]," the IDEA's administrative remedies "shall be exhausted to the same extent as would be required had the action been brought under [the IDEA.]" *See* 20 U.S.C. § 1415(l). Whether the relief being sought under these other laws is also available under the IDEA turns on whether the relief being sought is "for the denial of a FAPE." *Fry*, 137 S. Ct. at 752.

In its prior Order, the Court determined that all of the Wilsons's counterclaims under § 1983, the Rehabilitation Act, and the ADA are predicated on the allegation that the District did not provide MW access to school, which is a violation of FAPE (Dkt. No. 32, at 11 (citing Dkt. No. 13, at 16–28)). Applying *Fry*, the Court determined that the Wilsons were required to comply with exhaustion requirements in order for this Court to have subject-matter jurisdiction over their counterclaim (*Id.*). Upon further review of the parties' filings and the record before it, the Court now determines that it need not address the issue of when exhaustion of administrative remedies must be satisfied under the procedural facts and circumstances of this case or what constitutes exhaustion of administrative remedies under the procedural facts and circumstances of this case to resolve defendants' pending motion to dismiss. For reasons explained in this Order, the Court determines that, even if the Wilsons were required to and did exhaust their administrative remedies, the Wilsons do not challenge the hearing officer's conclusions about the matters that the Wilsons purport to complain about in their counterclaim. The Court is bound by the hearing officer's conclusions, and those conclusions preclude the Wilsons's counterclaims.

This is an argument the District raises. The District argues that, even if the Wilsons exhausted their administrative remedies, this Court does not have subject-matter jurisdiction over their counterclaim because their claims are precluded by the hearing officer's decision (Dkt. Nos. 31, at 3–4; 34, at 6–11).

15

As the Court stated above, the IDEA does not pre-empt parties from also seeking relief under the United States Constitution, the Rehabilitation Act, or the ADA, but it does require exhaustion of administrative remedies.  *See* 20 U.S.C. § 1415(l).  "When that process produces an administrative decision that is upheld on judicial review under IDEA, principles of issue and claim preclusion may properly be applied to short-circuit redundant claims under other laws."  *Indep. Sch. Dist. No. 283 v. S.D. by J.D.*, 88 F.3d 556, 562 (8th Cir. 1996) (citing *Univ. of Tenn. V. Elliott*, 478 U.S. 788, 796–99 (1986), and *Plough v. W. Des Moines Cmty. Sch. Dist.*, 70 F.3d 512, 515–16 (8th Cir. 1995)).  Even though the Wilsons's non-IDEA claims are analyzed under different standards, "[m]inor variations in the application of what is in essence the same legal standard do not defeat preclusion."  *Smith v. Bayer Corp.*, 564 U.S. 299, 312 n.9 (2011).  "Thus, preclusion applies if 'resolution of the IDEA claims necessarily resolved' the non-IDEA claims."  *I.Z.M. v. Rosemount-Apple Valley-Eagen Pub. Sch.*, 863 F.3d 966, 972 (8th Cir. 2017) (*quoting S.D.*, 88 F.3d at 562).

Here, the Wilsons bring claims under § 1983, the Rehabilitation Act, and the ADA (Dkt. No. 13).  Section 504 of the Rehabilitation Act and the ADA provide relief from intentional discrimination, whereas the IDEA provides relief from inappropriate educational placement decisions, regardless of discrimination.  The Wilsons seek relief that is not available under the IDEA in the form of compensatory damages (*Id.*, at 28).  In *Monahan v. State of Nebraska*, 687 F.2d 1164, 1170 (8th Cir. 1982), the Eighth Circuit held that to make out a violation of § 504 in the educational context, the plaintiff must show more than a mere failure to provide a free appropriate public education as required by the IDEA.  The requirement that something more than mere violation of the IDEA must be shown to demonstrate a violation of § 504 applies likewise to the ADA in the context of education.  The Eighth Circuit has held that enforcement remedies,

16

procedures, and rights under Title II of the ADA are the same as under § 504.  *See Pottgen v. Mo. State High Sch. Activities Ass'n*,  40 F.3d 926, 930 (8th Cir. 1994).  Accordingly, bad faith or gross misjudgment must also be established in order to make out a violation of the ADA in this context.  *See Hoekstra v. Indep. Sch. Dist. No. 283*, 916 F. Supp. 941, 949 (D. Minn. 1996) (citing *Monahan*, 687 F.2d at 1171, and *Fort Zumwalt Sch. Dist. v. Mo. State Bd. Of Educ.*, 865 F. Supp. 604, 607 n.3 (E.D. Mo. 1994)).

Here, the Court has the hearing officer's decision in the record before it.  The Court acknowledges that "preclusion [may apply] if 'resolution of the IDEA claims necessarily resolved' the non-IDEA claims."  *I.Z.M.*, 863 F.3d at 972 (quoting *S.D.*, 88 F.3d at 562, and examining this issue at the motion-for-summary-judgment stage).  The hearing officer made findings with respect to the District's conduct related to "how [to] best serve the oral and feeding needs that the Student exhibited" and the alleged "failure to provide services beyond October 24, 2016 . . . ."  (Dkt. No. 26-1, at 52).  For reasons explained, the hearing officer determined that the evidence presented did not support the Wilsons's claim that the District failed to provide a FAPE during the adjudicated period (*Id.*).  Neither the District nor the Wilsons challenged the hearing officer's decision.

Nothing in the Wilsons's counterclaim addresses the hearing officer's ADE Final Order; timely challenges the hearing officer's determination as erroneous; or alleges facts that, if taken as true, demonstrate bad faith or gross misjudgment on the part of defendants necessary to state claims under § 1983, § 504, or the ADA in this context.  For these reasons, the Court dismisses the Wilsons's counterclaim.

### III.    Conclusion

For the reasons set forth in this Order, the Court dismisses the Wilsons's counterclaim and denies the relief requested.

It is so ordered this 31st day of May, 2020.

Kristine G. Baker
United States District Judge